**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**DERRICK JEROME ALLEN (#295151)**            **CIVIL ACTION**

**VERSUS**

**KIP HOLDEN, ET AL.**            **NO. 10-0753-JJB-DLD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 26, 2011.

**MAGISTRATE JUDGE DOCIA L. DALBY**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DERRICK JEROME ALLEN (#295151)**  CIVIL ACTION

**VERSUS**

**KIP HOLDEN, ET AL.**  NO. 10-0753-JJB-DLD

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Motion to Dismiss of defendants Kip Holden and the City of Baton Rouge, rec.doc.no. 24, and the Motion to Dismiss of defendant Richard Anderson, rec.doc.no. 31. These motions are opposed.

The pro se plaintiff, an inmate presently incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Mayor Kip Holden, the City of Baton Rouge, the Director of the Louisiana Department of Public Works, Sheriff Greg Phares, Sheriff Elmer Litchfield, Warden Willie R. Douglas, Sgt. Mike Herpich, Lt. Rock Perkins, Lt. Melissa Herpich, Sgt. Marento, Dpty Rudy Hyde, East Baton Rouge Parish District Attorney Doug Moreau, East Baton Rouge Parish Ass't District Attorney Steven Danielson, East Baton Rouge Parish District Judge Richard Anderson, and an unidentified "John Doe" defendant, complaining that on March 16, 2007, while he was confined at the East Baton Rouge Parish Prison ("EBRPP"), he suffered a broken arm as a result of a slip and fall in the shower stall located within his housing unit. The plaintiff complains that when he thereafter requested medical attention, his requests were initially denied, and when he was later taken to the Earl K. Long Hospital ("EKL") on that date, prison officials subjected him to verbal abuse and failed to act so as to minimize his pain and discomfort. In addition, when he was returned to the prison later in the day, instead of being placed in the infirmary, he was placed in segregated confinement in a cell which had no running water, and he asserts that this was done in retaliation for a prior lawsuit filed by the plaintiff against prison

officials.  Finally, the plaintiff complains that on May 31, 2007, he was taken to the East Baton Rouge Parish courthouse for a scheduled sentencing hearing and was there involved in a physical altercation with another inmate because prison officials failed to protect him from such harm.  Further, instead of being allowed to obtain medical attention at that time, defendant Judge Richard Anderson and Ass't District Attorney Steven Danielson conspired to compel the plaintiff to proceed with the sentencing hearing, notwithstanding that he was in great pain, was without his legal materials, and was unable to properly represent himself.  The plaintiff contends that Judge Anderson took this action in retaliation for the plaintiff having insisted upon representing himself in connection with the criminal proceedings.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a Complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  In Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and more recently, in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6).  The Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]"  Bell Atl. Corp. v. Twombly, supra, quoting Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  See also Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).  Notwithstanding, although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, a plaintiff must furnish "more than labels and conclusions" or the" formulaic recitation of the elements of a cause of action" in order to provide the "grounds" of "entitle[ment] to relief."  Bell Atl. Corp. v. Twombly, supra.  See also Papasan v. Allain, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).  The Court further stated that while there is no "probability requirement at the pleading stage," Bell Atl. Corp. v. Twombly, supra, "something beyond ... mere possibility ... must be alleged."  Id.  Specifically, the facts alleged in the Complaint "must be enough to raise a right to relief above the

speculative level," or must be sufficient "to state a claim for relief that is plausible on its face," Id. (abandoning the "no set of facts" language set forth in Conley v. Gibson, supra). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, supra. Where a Complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." Id.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." Erickson v. Pardus, supra. See also Bell Atl. Corp. v. Twombly, supra. Further, "[a] document filed pro se is to be liberally construed ... and a pro se Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, supra (citations omitted).

Addressing first the Motion to Dismiss of defendant Judge Richard Anderson, the Court concludes that the plaintiff fails to state a claim relative to this defendant. Specifically, the Court finds that defendant Anderson is protected by the doctrine of absolute judicial immunity. While such immunity is a question of law to be determined upon the facts of each case, Brewer v. Blackwell, 692 F.2d 387 (5th Cir. 1982), it is clear that this immunity extends to claims arising from acts performed in the defendant's judicial role. The immunity shields a judge unless he acts in the clear absence of all jurisdiction over the subject matter or in a non-judicial capacity. See, e.g., Mireles v. Waco, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); Brewer v. Blackwell, supra. See also Ammons v. Baldwin, 705 F.2d 1445 (5th Cir. 1983), cert. denied, 465 U.S. 1006, 104 S.Ct. 999, 79 L.Ed.2d 232 (1984). Moreover, this immunity applies however erroneous the act and however evil the motive. Johnson v. Kegans, 870 F.2d 992 (5th Cir. 1989). Applying this test here, it is clear that, notwithstanding the plaintiff's assertion that he was in need of medical treatment and suffering pain from an altercation earlier on that date, that he was unprepared, and that the judge was motivated by retaliatory animus, the alleged conduct of Judge Anderson in compelling the plaintiff's appearance in court and in conducting the plaintiff's sentencing hearing on May 31, 2007, was

within the scope of the defendant's judicial authority. Therefore, defendant Anderson is shielded from the plaintiff's claims by absolute judicial immunity and is entitled to dismissal herein.

Turning to the Motion to Dismiss of Mayor Kip Holden and the City of Baton Rouge, these defendants contend that the plaintiff's claims asserted against them are time-barred. The Court finds, however, that it need not address this contention. Instead, the Court will address the plaintiff's claims asserted against these and other defendants under 28 U.S.C. § 1915A. Pursuant to this statute, the Court is authorized to review pleadings filed by a prisoner against "a governmental entity or officer or employee of a governmental entity" and to dismiss all or part of the claims asserted therein if the Court determines that such claims are frivolous, malicious, or fail to state claims upon which relief may be granted. Cf., Green v. McKaskle, 788 F.2d 1116 (5th Cir. 1986). A § 1915A dismissal may be made at any time, before or after service of process, and before or after an answer is filed. Id. A claim is properly dismissed as frivolous if the claim lacks an arguable basis either in fact or in law. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), citing Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995). Further, as discussed above, a pleading fails to state a claim upon which relief may be granted when the plaintiff fails to provide "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, supra.

Applying this standard in the instant case, the Court concludes that certain of the claims asserted in the plaintiff's Complaint are subject to dismissal as being clearly without merit.

Initially, the Court notes that the plaintiff has named the defendants herein in both their individual and their official capacities. Section 1983, however, does not provide a federal forum for litigants who seek a remedy against a State or its officials acting in their official capacities inasmuch as these parties are not seen to be persons under § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). In Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), the United States Supreme Court addressed the distinction

between official capacity claims and individual capacity claims and made clear that a claim asserted against a state official in his official capacity for monetary damages is treated as a claim against the State and is therefore barred by the Eleventh Amendment. Accordingly, the plaintiff's claim for monetary damages asserted against the defendants in their official capacities is subject to dismissal for this reason.[1]

Turning to the plaintiff's claims asserted against the defendants in their individual capacities, he first complains that he sustained a slip and fall in the shower at EBRPP on March 16, 2007. He asserts that the referenced shower stall is made of stainless steel and is slippery when wet. He complains that there were no signs warning of this danger and no floor mats to prevent falls. He further complains that there was no light in the shower stall and that the shower was not working properly, all of which contributed to his fall.

The plaintiff's claim of an alleged dangerous condition within his housing unit implicates his Eighth Amendment constitutional right to be free from cruel and unusual punishment in the form of exposure to unconstitutional conditions of confinement. In this regard, however, it is well-settled that the United States Constitution imposes upon prison officials only minimal requirements in the treatment and facilities which they provide to prisoners. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Specifically, a constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition "be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." Harris v. Angelina County, Texas, 31 F.3d 331 (5th Cir. 1994),

---

[1] In contrast, the plaintiff's claims for monetary damages asserted against government officials in their individual or personal capacities, seeking to impose individual liability for actions taken by the officials under color of state law, are not treated as claims against the state. Thus, personal liability for such damages may be established in a § 1983 lawsuit upon a showing that a defendant state official, acting individually and under color of state law, has caused the deprivation of the plaintiff's federal rights. Further, a state official in his or her official capacity, when sued for injunctive relief, is not a prohibited defendant because official capacity actions for prospective relief are not treated as actions against the state. Will v. Michigan Department of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989). See also 15 Am.Jur.2d Civil Rights § 101.

citing Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  Second, under a subjective standard, the Court must determine that the prison official responsible for the deprivation was "'deliberately indifferent' to inmate health or safety".  Farmer v. Brennan, supra.  Mere negligence is not a basis for liability under § 1983.  Oliver v. Collins, 904 F.2d 278 (5th Cir. 1990); Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987).  Rather, the prison official must have been both personally aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and the official must also have drawn the inference.  Farmer v. Brennan, supra.  The deliberate indifference standard is appropriately applied to the plaintiff's allegations regarding the conditions of his confinement.  Woods v. Edwards, 51 F.3d 577 (5th Cir. 1995); Wilson v. Seiter, supra.

In the instant case, there is no indication whatever that any of the defendants were deliberately indifferent to the plaintiff's health or safety or deprived the plaintiff of any basic human need.  All that the plaintiff has alleged is that there were slippery conditions in the shower area of his housing unit on March 16, 2007, and that this condition caused him to sustain a fall and injury on that date.  There is nothing to suggest, however, that any defendant was personally aware, prior to the plaintiff's injury, that this condition presented a significant risk of harm to the plaintiff's health or safety.  Nor does his mere allegation that a similar incident occurred in 2004 support this contention.  Further, there is nothing in the record to suggest that the plaintiff and numerous other inmates housed in that facility were not generally able, on a daily basis, to negotiate the open and obvious condition.  Although it might have been preferable to have provided floor mats in the shower, it is clear that not every minimally deficient condition rises to the level of a constitutional deprivation.  On the record before the Court, therefore, it does not appear that the alleged dangerous condition in the instant case represents the denial of a basic human need or represents deliberate conduct on the part of the defendants in exposing the plaintiff to a serious risk of injury of which they were subjectively aware.  Instead, the plaintiff's claim sounds more in the nature of a claim of negligence which is not actionable under 42 U.S.C. § 1983.  See Noble v. Grimes, 350

Fed.Appx. 892 (5th Cir. 2009) (dismissing as frivolous a claim relative to a slip and fall in a prison shower area); Smith v. Leonard, 242 Fed.Appx. 139 (5th Cir. 2007) (same); Beasley v. Anderson, 67 Fed.Appx. 242 (5th Cir. 2003), cert. denied, 540 U.S. 1114, 124 S.Ct. 1050, 157 L.Ed.2d 905 (2004) (same, where no floor mat provided); Sawyer v. Hickey, 62 F.3d 395 (5th Cir. 1995) (same, where shower stall was not lighted). Accordingly, on the record before the Court, the Court concludes that there is no basis for the imposition of liability against the defendants in connection with this claim.

The plaintiff next asserts that after his fall, he requested medical attention, but his requests were initially denied. He acknowledges, however, that later on the same date, he was taken by wheelchair to the prison infirmary and, ultimately, to Earl K. Long Hospital ("EKL") where he underwent surgery for a fracture. The plaintiff complains, however, that prison officials subjected him to taunts and verbal abuse prior to transporting him to EKL and that his arrival at EKL was delayed because the defendants did not call an ambulance to transport him to the hospital. In addition, the plaintiff complains that, upon arrival at EKL, the defendants had their guns drawn in a threatening manner and did not procure a wheelchair or stretcher for him to use in entering the hospital. Finally, the plaintiff complains that, upon his return to the prison on that date, he was not placed in the infirmary ward but was instead assigned to a lockdown cell and was not allowed to return to the general population.

Addressing first the plaintiff's claim that the defendants subjected him to verbal abuse and threatening and intimidating gestures on March 16, 2007, this claim is without constitutional merit. The law is clear that, "[m]ere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation." McFadden v. Lucas, 713 F.2d 143 (5th Cir.), cert. denied, 464 U.S. 998, 104 S.Ct. 499 (1983); Burnette v. Phelps, 621 F.Supp. 1157 (M.D. La. 1985); Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973). Accordingly, the plaintiff's allegations in this regard are insufficient to state a claim of constitutional dimension.

Turning to the plaintiff's claim regarding his medical care on the referenced date, in order

for an inmate-plaintiff to prevail on a claim that his constitutional rights have been violated by the provision of improper or inadequate medical care, he must allege and show that appropriate care was denied and that the denial constituted "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Johnson v. Treen, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment or accommodation which he believes he should have is not the issue. Estelle v. Gamble, supra; Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, supra. Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. Farmer v. Brennan, supra. As stated in Farmer, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. The deliberate indifference standard is high; the plaintiff must establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752 (5th Cir. 2001). Further, a mere delay in treatment does not constitute an Eighth Amendment violation without both deliberate indifference and a resulting substantial harm. Mendoza v. Lynaugh, 989 F.2d 191 (5th Cir. 1993).

Applying this standard to the plaintiff's allegations, it does not appear that he states a claim of constitutional significance. Although he asserts that he was initially denied treatment after the incident, he acknowledges that he was later taken by wheelchair to the prison infirmary and was then taken, on the same date, to EKL for treatment and surgery. Clearly, therefore, his complaints were attended to and were not ignored by the defendants. Further, the plaintiff has failed to allege any substantial harm resulting from the brief delay in treatment of which he complains. Finally, the mere fact that the plaintiff was classified to a lockdown cell upon his return from EKL instead of to

the prison infirmary ward does not amount to a violation of the plaintiff's constitutional rights. The classification of prisoners is a matter left to the sound discretion of prison officials. Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983), and inmates have no right to a particular classification under state law. Id. See also McGruder v. Phelps, 608 F.2d 1023 (5th Cir. 1979.) Prison officials are given broad administrative and discretionary authority over the institutions they manage and are accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). In the instant case, the plaintiff has not alleged that his medical condition required that he be placed in the infirmary ward or that he was deprived of treatment as a result of his placement in the lockdown cell for his protection. Accordingly, this claim is without merit and must be dismissed.

Notwithstanding the foregoing, the plaintiff also complains that the lockdown cell to which he was confined had no water supply allowing him to drink, brush his teeth or use for personal hygiene, and that he was maintained in that cell from March 16 to June 1, 2007, a period of approximately 2½ months. He asserts that his many requests to be transferred to a cell with running water were ignored by the defendants. He further complains that his assignment to this cell was made in retaliation for a lawsuit which he had filed against prison officials.

"The Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones," see Harper v. Showers, 174 F.3d 716 (5th Cir. 1999), citing Woods v. Edwards, 51 F.3d 577 (5th Cir. 1995). The prohibition against cruel and unusual punishment requires that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing and medical care. Herman v. Holiday, 238 F.3d 660 (5th Cir. 2001). A constitutional violation only occurs, however, when the conditions to which an inmate is subjected are so serious as to deprive him of the "minimal civilized measure of life's necessities", and the defendants have exhibited deliberate indifference to the inmate's health or safety. Id. In the instant case, inasmuch as this Court finds that access to drinking water is a basic human need which may

not arbitrarily be denied and inasmuch as the plaintiff alleges that he was denied such access for a period of 2½ months, notwithstanding many requests and complaints, the Court finds that this claim should be allowed to continue at this juncture. See Seal v. Harrison County, Mississippi, 2010 WL 2545406 (S.D. Miss., June 18, 2010) (denying summary judgment to defendants where inmate alleged that he had no running water in his cell and was provided with only a little liquid over a two-day period). In reaching this conclusion, the Court makes no finding relative to any potential merit as to this claim but defers further consideration thereof to an evidentiary showing on motion for summary judgment.

The plaintiff also asserts that his placement in the referenced lockdown cell was done in retaliation for a prior lawsuit which he had filed against prison officials. In this regard, the law is clear that the taking of action against an inmate because of the inmate's exercise of his constitutional rights is itself a violation of the inmate's constitutional rights. Ruiz v. Estelle, 679 F.2d 1115 (5th Cir.), opinion amended in part and vacated in part, 688 F.2d 266 (1982), cert. denied, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); Gibbs v. King, 779 F.2d 1040 (5th Cir.), cert. denied, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986). Specifically, prison officials are not allowed to retaliate against an inmate because of the inmate's exercise of his First Amendment right to complain to supervisory officials about the alleged wrongful conduct of prison security officers. Id. However, inasmuch as claims of retaliation are not favored, it is the plaintiff's burden to provide more than mere conclusory allegations of retaliation:

> To state a claim of retaliation an inmate must ... be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred. This places a significant burden on the inmate.... The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.

Woods v. Smith, supra, 60 F.3d. at 1166.

The plaintiff's allegations of retaliation in this case are wholly conclusory. The plaintiff states only his subjective belief that the actions of the defendants were taken because he had filed a prior lawsuit against prison officials. He alleges no facts to support this bare-bones assertion. Nor does

he provide a chronology of events from which a retaliatory motive may plausibly be inferred. In the absence of any factual allegations suggesting that the defendants' conduct was in fact motivated by retaliatory animus, this claim is subject to dismissal as well.

The plaintiff next asserts that, on May 31, 2007, he was escorted to the 19th Judicial District Court for the Parish of East Baton Rouge and was there placed in a holding cell with approximately fifty (50) other inmates while awaiting a scheduled sentencing hearing. While waiting for his court appearance, he allegedly became involved in a confrontation with another prisoner and sustained injury. He asserts that the defendants should not have placed him in the holding cell and that, by doing so, the defendants failed to protect him from harm.

Under the Eighth Amendment, a prisoner has a constitutional right to be sheltered from a constant threat of harm or violence at the hands of other inmates. Jones v. Diamond, 636 F.2d 1364 (5th Cir. 1981); Johnston v. Lucas, 786 F.2d 1254 (5th Cir. 1986). Not every prison fight is actionable, however. In order for there to be liability in connection with this cause of action, there must have existed an intent on the part of the defendants to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be protected from such harm. Johnston v. Lucas, supra. "Deliberate indifference" is the appropriate standard to be applied in this context, and this term has been defined as including an element of "subjective recklessness" as used in the criminal law. Farmer v. Brennan, supra ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.")

Notwithstanding the plaintiff's assertion that he should not have been placed in the holding cell at the parish courthouse, the Court finds that the plaintiff has failed to allege facts sufficient to support a claim for relief relative to this contention. He does not assert, for example, that he informed any defendant that he faced a particular danger from other prisoners in the holding cell or that any defendant was subjectively aware of such danger. His only assertion in this regard is his contention that, since he was assigned to a lockdown cell at EBRPP "for his protection", he

should not have been placed unprotected in the holding cell. This contention, however, sounds more in the nature of a claim of negligence and does not equate to a claim that any prison official intended to cause him harm or was consciously or callously indifferent to the possibility of such harm. Further, the reason he had been assigned to a lockdown cell at the prison was apparently because his broken arm made him more vulnerable to harm from other prisoners whereas, at the time of the altercation on May 31, 2007, two and a half months had elapsed since his initial injury and his arm was not so fragile. Further, the plaintiff acknowledges that the referenced altercation occurred when another prisoner attempted to take the plaintiff's seat in the crowded holding cell, and so was an altercation which could not reasonably have been anticipated by prison officials before it occurred. See Marrero v. Unites States Bureau of Prisons, 81 F.3d 154 (5th Cir. 154) (affirming dismissal of inmate's claim arising from a fight with a co-inmate in a holding cell where there was "no allegation that [the defendant] knew or had been informed of threats or danger to [the plaintiff] or that any who might be out to get him were in the cage.") Accordingly, the plaintiff's claim in this regard is not actionable under § 1983.

The plaintiff next asserts that, shortly after he was injured at the courthouse on the morning of May 31, 2007, he was returned to the prison for medical attention, and a physician at the prison recommended that the plaintiff be transported to EKL for treatment. The plaintiff complains, however, that Ass't District Attorney Steven Danielson then approached Judge Richard Anderson and "conspired with the judge to have the deputies to transport the [plaintiff] back to court." As a result, the plaintiff was returned to court for his sentencing hearing, at which hearing he was allegedly unprepared and in severe pain. The plaintiff further asserts that District Attorney Doug Moreau failed to properly train and supervise defendant Danielson and instead enacted a policy with his employees, "instructing them to do whatever they have to do, in order to get their job done, even if it's unlawful, unethical, or unconstitutional ...."

The Court concludes that the plaintiff's claims asserted against defendants Danielson and Moreau are barred by the doctrine of absolute prosecutorial immunity. In this regard, a district

attorney is absolutely immune in a civil rights lawsuit for any action taken pursuant to his role as a prosecutor in preparing for the initiation of judicial proceedings or in presenting the State's case before the court.  See Kalina v. Fletcher, 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); Esteves v. Brock, 106 F.3d 674 (5th Cir.), cert. denied, 522 U.S. 828, 118 S.Ct. 91, 139 L.Ed2d 47 (1997).  The courts employ a "functional" test to determine whether a prosecutor is entitled to absolute immunity, pursuant to which the courts look to the "nature of the function performed".  Buckley v. Fitzsimmons, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).  A prosecutor's immunity applies to his actions in initiating prosecution, in carrying the case through the judicial process, and to those actions which are "intimately associated with the judicial phase of the criminal process." Esteves v. Brock, supra, quoting Imbler v. Pachtman, supra.  "A prosecutor's absolute immunity will not be stripped because of action that was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Labry v. Mamoulides, 248 F.3d 1142 (5th Cir. 2001), quoting Kerr v. Lyford, 171 F.3d 330 (5th Cir. 1999), abrogated on other grounds, Castellano v. Frazogo, 352 F.3d 330 (5th Cir. 2003), cert. denied, 543 U.S. 808, 125 S.Ct. 31, 160 L.Ed.2d 10 (2004).  In the instant case, the plaintiff's claim against District Attorneys Danielson and Moreau is based on the defendants' conduct as advocates for the State of Louisiana in bringing the plaintiff before the Court for sentencing on the referenced date. The defendants are therefore entitled to absolute prosecutorial immunity.  See Imbler, supra; Cousin v. Small, 325 F.3d 627 (5th Cir. 2003), cert. denied, 540 U.S. 826, 124 S.Ct. 181, 157 L.Ed.2d 48 (2003); Delaney v. Ackal, 2009 WL 5195935 (W.D. La., Oct. 10, 2009).[2]

---

[2] The Court further notes that the plaintiff's allegations relative to a conspiracy existing between District Attorney Danielson and Judge Anderson are entirely conclusory and that such allegations are insufficient to support a claim of conspiracy.  In order to establish a cause of action based upon conspiracy under § 1983, it is necessary for the plaintiff to provide more than mere conclusory, blanket allegations of same.  Young v. Biggers, 938 F.2d 565 (5th Cir. 1991); Arsenaux v. Roberts, 726 F.2d 1022 (5th Cir. 1982).  The plaintiff must allege specific facts suggesting that the defendants have banded together in order to commit an illegal act.  In the instant case, the plaintiff has failed to state specific facts supporting a claim of conspiracy.  This leaves the Court

The plaintiff has also named as defendants herein Mayor Kip Holden and the Director of the Louisiana Department of Public Works but has failed to allege any specific facts against them. Pursuant to well-settled legal principles, in order for an official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of a constitutional right, or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. Lozano v. Smith, 718 F.2d 756, at 768 (5th Cir. 1983). Any allegation that these defendants are responsible for the actions of their subordinates or co-employees is insufficient to state a claim under § 1983. Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Further, in the absence of direct personal participation by a supervisory official in the alleged constitutional violation, the plaintiff must establish that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies, or as a result of a breach by the supervisor of an affirmative duty specially imposed upon him by state law. Lozano v. Smith, supra.

Applying the foregoing standard, and upon a review of the plaintiff's Complaint, it appears that the plaintiff has insufficiently alleged that either Mayor Holden or the Director of the Department of Public Works has taken any action which may be characterized as a violation of the plaintiff's constitutional rights. Specifically, the plaintiff makes no assertion that these defendants were present at the prison during any of the events alleged, were personally aware of the alleged conditions to which the plaintiff was subjected, or participated directly or personally in the plaintiff's

---

with nothing more than "merely conclusory allegations" upon which to evaluate this claim, See, e.g., Elliot v. Perez, 751 F.2d 1472 (5th Cir. 1985), and accordingly, this claim should be dismissed. Further, with regard to the plaintiff's conclusory assertion that District Attorney Moreau failed to train and/or supervise his subordinate employees, the recent case of Connick v. Thompson, ___ U.S. ___, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011), makes clear that "[a] district attorney is entitled to rely on prosecutors' professional training and ethical obligations in the absence of specific reason, such as a pattern of violations, to believe that those tools are insufficient to prevent future constitutional violations ...." As such, there are no facts alleged which would support such a claim against defendant Moreau.

medical care, in his housing classification, or in addressing maintenance problems at EBRPP. Although the plaintiff makes a conclusory assertion that there was a general failure to train and/or supervise prison employees and/or maintenance personnel, this conclusory assertion is insufficient to establish any liability on the part of these defendants. In order to state a constitutional claim for liability based on a failure to train or supervise, the plaintiff must allege that (1) the defendants failed to train or supervise their subordinate officers, (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's constitutional rights, and (3) the failure to train or supervise amounted to deliberate indifference. Estate of Davis ex rel. McCully v. City of North Richland Hills, 406 F.3d 375 (5th Cir. 2005). The plaintiff has wholly failed to make such allegations, and his mere conclusory assertion regarding an alleged failure to train and/or supervise subordinate employees is insufficient to support a finding of liability under § 1983. See Yates v. Unidentified Parties, 73 Fed.Appx. 19 (5th Cir. 2003), cert. denied, 540 U.S. 1123, 124 S.Ct. 1081, 157 L.Ed.2d 920 (2004) (holding that the plaintiff's "vague and conclusional allegation" regarding an alleged failure to train and/or supervise was not sufficient to support liability). Accordingly, the plaintiff fails to state a claim upon which relief may be granted as to these defendants, and they are entitled to dismissal from this proceeding.

Similarly, although the plaintiff has named the City of Baton Rouge as a defendant herein, in order for there to be municipal liability under § 1983, the plaintiff must be able to show that there is a direct causal connection between a policy, practice or custom of the municipality and the constitutional violation sought to be redressed. City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). He must specifically identify the alleged policy, show a connection between the policy and the governmental entity itself, and show that his injuries were incurred because of the application of that specific policy. Bennett v. City of Slidell, 728 F.2d 762 (5th Cir. 1984), cert. denied, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). Proof of a single incident is ordinarily insufficient to hold a municipality liable for inadequate training and/or supervision. Gabriel v. City of Plano, 202 F.3d 741 (5th Cir. 2000). Further, "[t]he description of a

policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts." Spiller v. City of Texas City, Police Dept., 130 F.3d 162 (5th Cir. 1997). In the instant case, however, the plaintiff has provided no specific allegation whatever relative to any established policy or practice of the City of Baton Rouge which may be seen to have caused the injuries of which he complains. Although a municipality's failure to properly train and/or supervise its employees may amount to a policy or custom giving rise to liability under § 1983, see City of Canton, Ohio v. Harris, supra, a mere conclusory assertion in this regard, as above noted, is insufficient to support a finding of municipal liability. Accordingly, the plaintiff's claim asserted against the City of Baton Rouge must be dismissed.

Finally, to the extent that the plaintiff also seeks to invoke the supplemental jurisdiction of this Court over his claims arising under state law, a district court may decline to exercise supplemental jurisdiction if the state law claims raise novel or complex issues of state law, if the claims substantially predominate over claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, based upon the record herein, the Court concludes that it is appropriate for the Court to decline to exercise supplemental jurisdiction over the plaintiff's state law claims.

## RECOMMENDATION

Based on the foregoing, it is recommended that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claims, and that the Motion to Dismiss of defendant Richard Anderson, rec.doc.no. 31, be granted, dismissing the plaintiff's claims asserted against this defendant, with prejudice. It is further recommended that the plaintiff's claims asserted against the remaining defendants be dismissed pursuant to 28 U.S.C. § 1915A, with the exception of the plaintiff's claim asserted against defendants Sheriff Greg Phares, Sheriff Elmer Litchfield, Warden Willie R. Douglas, Sgt. Mike Herpich, Lt. Rock Perkins, Lt. Melissa Herpich, Sgt. Marento and Dpty Rudy Hyde, in their individual capacities, that these defendants violated his constitutional rights by

housing him in a cell without running water between March 16 and June 1, 2007.  This dismissal should be made without prejudice to any state law claims which the plaintiff may have.  It is further recommended that the Motion to Dismiss of Mayor Kip Holden and the City of Baton Rouge, rec.doc.no. 24, be denied as moot, and that this matter be referred back to the Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on August 26, 2011.

**MAGISTRATE JUDGE DOCIA L. DALBY**